BANK OF IPSWICH, Appellant, v. SECURITY BANK & TRUST CO., et al, Respondents.

(226 N. W. 761.)

(File No. 6564. Opinion filed September 20, 1929)

*A. L. Beardsley,* of Ipswich, for Appellant.
*Waddel & Dougherty,* of Webster, for Respondents.

FULLER, C. On January 5, 1924, the Security Bank & Trust Company of Webster, now insolvent, held certain notes to it made payable by one C. McGinitie, who was the president of the Farmers' & Merchants' State Bank of Hecla. The Webster bank also held a written guaranty, executed by the directors of the Hecla bank, according to which they guaranteed the payment at maturity of notes sold or discounted by the Hecla bank to the Webster bank. On the date above mentioned the appellant Bank of Ipswich had a large deposit with the Webster bank, and, in consideration of a credit of $50,000 in favor of the Webster bank and against the deposit of appellant, the Webster bank sold to appellant several notes, including the McGinitie notes, involved in this action.

Appellant, Bank of Ipswich, commenced this suit against the Security Bank & Trust Company of Webster to recover the amount by it paid for the McGinitie notes, claiming that one Kopperud, the president of the Webster bank, had falsely represented that the McGinitie paper was secured by the above-mentioned guaranty of the directors of the Hecla bank. As a method of establishing that the guaranty did not in fact cover, or stand as security for, the McGinitie notes above mentioned, the appellant undertook a line of proof which, if permitted, would show that the Security Bank & Trust Company, by its acts and conduct, after the transaction above alleged, had admitted the fact thus sought to be established. The ruling of the court in sustaining respondent's objection to appellant's offer to prove these facts is the only question presented by appellant in this court, on appeal from judgment of dismissal and order overruling motion for new trial.

In refutation of appellant's contention, that the court erred in refusing the offer of proof, the respondent insists that there is no

evidence in the record sufficient to show any false representation, as alleged, that the guaranty covered or secured the notes involved in this action. · On this appeal it must be considered as immaterial whether or not the alleged representation was true or false, if that representation, as alleged, was not proven.

At the trial appellant's officer testified that, when he accepted the McGinitie paper for the consideration above mentioned, the transaction occurred at the banking house of the Security Bank & Trust Company in Webster; that Kopperud, the officer of the Webster bank, there represented that the guaranty of the directors of the Hecla bank "covered all the notes that were in the Bank of Hecla with this Bank of Hecla's collection of notes," and a conversation as to the financial responsibility of the signers of the guaranty was had. It is also established that the rights of the Webster bank under the written guaranty were assigned to the appellant bank in writing. It ought to be clear that, before this court may rightly reverse the decision of the trial court, it should satisfactorily be made to appear in the printed record that appellant established, prima facie, the representation alleged. The testimony above quoted is vague, indefinite, and confusing. Counsel say that the above statement of appellant's witness is not quite so clear as it might be, and that the same is not a correct transcript of the evidence as actually given from the witness stand.

But it is urged that the statement should be considered with the fact that the written guaranty was exhibited by the officer of the Webster bank to the officer of appellant's bank, that the guaranty was assigned in connection with the transaction above mentioned, and that the financial condition of the directors was discussed. It is quite true that the fact the guaranty was assigned to appellant and the financial standing of the guarantors was discussed would help toward the inference that Kopperud had reference to the McGinitie paper when he spoke of the guaranty, provided no other notes were involved in the transaction to which the guaranty could be said to relate. But, concerning the aggregate of paper purchased by appellant bank from the Webster bank, appellant's officer stated: "I took some notes the trust company was carrying with the Bowdle bank, the Citizens' State Bank of Andover, and this bank at Hecla."

A list or description of all the notes thus purchased does not

appear in the record, but the above statement indicates that appellant purchased from the Webster bank some notes which the Webster bank had acquired from the Hecla bank. If we are correct in our interpretation of this record, that appellant bank did purchase paper to which the guaranty might properly relate, other than the McGinite notes, there can be no significance in the mere fact that the guaranty was assigned and the financial responsibility of its signers discussed. After a careful examination of all the evidence which appellant, under its burden of proof, introduced at the trial of this case, we must return to a consideration of the bare representation that the guaranty "covered all the notes that were in the Bank of Hecla with this Bank of Hecla's collection of notes." To connect that representation with the McGinitie paper, it must have been shown what was meant in the conversation between the parties by "this Bank of Hecla's collection of notes." and that the McGinitie paper was in fact, and at the time, within the description understood by the parties as the Bank of Hecla's collection of notes.

If it was intended to be shown at the trial, as intimated in oral argument here, that the Webster bank carried a pouch which included notes sold and discounted to the Webster bank by the Bank of Hecla, and if it was intended to be shown that the officer of the Webster bank referred to and had in mind the notes in such a pouch, when he spoke of the Bank of Hecla's collection of notes, and if it was further intended to be shown that the McGinitie notes were in such a pouch, at the time, evidence to that effect should have been introduced and exhibited to this court in the printed record. For the purpose of discovering prejudicial error in the ruling of the trial court, to the end that its judgment may be reversed, this court is asked to interpolate into the record testimony which was absolutely vital to the plaintiff's cause of action. The proof shows that the McGinitie paper was not sold or discounted by the Bank of Hecla to the Webster bank, and the error of which appellant complains is in the refusal of the trial court to allow appellant to show that the Webster bank subsequently admitted this fact. The McGinitie paper, being payable directly to the Webster bank, showed no indication by indorsement or otherwise that it had been sold or discounted by the Hecla bank. Under these circumstances, as a foundation of appellant's cause of action,

it should have been made to definitely appear that the officer of the Webster bank referred, at least inferentially, to the McGinitie paper in making the representation. In short, a representation that the guaranty covered a certain "collection of notes" cannot be said to have related to any specific note, not proven to have been within the so-called collection of notes, where there is no showing of what was meant by the party in making reference to the collection of notes.

It also appears that appellant's witness was asked and answered a question as follows: Question: "I will ask you to state whether or not his statement to you, as you have testified, that these notes, Exhibits 1, 2, 3, were secured by the guaranty, Exhibit 4, had something to do with your accepting the notes?" Answer: "Yes."

If, before this question was asked, there was no definite proof of any representation having been made as alleged in the complaint, we may not treat the substance of this question, and counsel's interpretation of the proof, as sufficient to supply the fatal omission of the required proof. The question was asked to ascertain whether the witness considered himself influenced by the representation , and not to prove the fact of representation. It is no hardship on a suitor, claiming damage by the fraudulent representation of another, to first require an intelligent statement of the representation; and there is nothing captious in the observation that an appellate court may not resort to the processes of mind reading or divination to supply conspicuous omissions, however apparent it may be that a witness intended to swear to facts not stated.

The trial court's rejection of appellant's offer to prove that the Webster bank, subsequent to the transaction of purchase of the paper, admitted that the McGinitie paper was not secured by the guaranty of the directors of the Hecla bank, does not, therefore, appear to have been either erroneous or prejudicial.

The judgment and order appealed from are affirmed.

SHERWOOD, P. J., and POLLEY, CAMPBELL, BURCH, and BROWN, JJ., concur.